IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| NATIONAL EQUIPMENT DEALERS, LLC, *Plaintiff*, v. IROCK CRUSHERS LLC, *Defendant*. | Case No. 1:24-cv-01015 |

**MEMORANDUM OPINION**

This case involves a commercial dispute between National Equipment Dealers, LLC ("NED"), and IROCK Crushers LLC ("IROCK"). Briefly, NED maintains that IROCK—through its failure to repurchase certain products and inventory from NED—has violated its obligations under North Carolina law. Presently before the Court are two motions: NED's Motion to Remand (ECF No. 8), and IROCK's Motion to Transfer Venue to the Northern District of Ohio (ECF No. 14). These motions have been fully briefed and the Court heard oral argument on the motions on May 21, 2025. For the reasons that follow, the Court will deny NED's Motion to Remand (ECF No. 8) and grant IROCK's Motion to Transfer (ECF No. 14).[1]

---

[1] Also pending is IROCK's Motion to Dismiss (ECF No. 16). Given the disposition herein of the other pending motions, the Court declines to reach the Motion to Dismiss. Instead, the Northern District of Ohio should consider that motion upon its receipt of this case as it deems appropriate.

## I. FACTUAL BACKGROUND

In August 2023, NED and IROCK entered into an industrial machinery distribution agreement (the "Agreement"). Compl. ¶¶ 5, 6, 9, ECF No. 2. Under the Agreement, IROCK agreed to sell, and did in fact sell, equipment to NED for resale to its own customers. *Id.* ¶¶ 5, 8. Relevant here, Section 22 of the Agreement includes a mandatory forum selection clause. Notice of Removal Ex. B ("Agreement") 20[2], ECF No. 1–2. That clause provides as follows: "Any legal proceedings relating to this agreement shall be conducted in any court of competent jurisdiction sitting in Cuyahoga County in the State of Ohio." *Id.* (cleaned up). Section 22 also includes a choice of law clause, which reads: "This Agreement, . . . and all matters arising out of or relating to this Agreement, are governed by, and construed in accordance with, the laws of the State of Ohio[.]" *Id.*

IROCK subsequently terminated the Agreement, effective August 2024. Compl. ¶ 10. That termination was effectuated under Section 11.5, entitled "Termination for Convenience," which grants either party the "right to terminate th[e] [A]greement, with or without cause and for any reason, upon ninety (90) days prior written notice." Agreement 14.

A separate section of the Agreement—Section 12.2—provides that, upon termination of the Agreement, IROCK has an obligation to repurchase equipment inventory from NED. *Id.* However, that obligation only applies if "the Agreement was terminated under Sections 11.1 or 11.2 by [NED] for breach by IROCK." *Id.* And here, both parties

---

[2] For this and all other filings, the Court utilizes the pagination assigned by the CM/ECF system and not the pagination appearing on the original document.

agree that the Agreement was terminated for convenience—not a breach. *See* Mem. Supp. Mot. Transfer 1, ECF No. 15; Mem. Opp'n Mot. Transfer 2, ECF No. 29.

Since terminating the Agreement, IROCK has refused to repurchase any of NED's inventory. *See* Compl. ¶ 12 ("At multiple times before and after August [] 2024, IROCK has stated that it has no obligation or intention to repurchase NED's inventory.").

## II. PROCEDURAL HISTORY

Following IROCK's termination of the Agreement, NED filed this suit in North Carolina state court. Notice of Removal 1, ECF No. 1. In its Complaint, NED asserts that IROCK's refusal to repurchase inventory violates two North Carolina statutes: the Farm Machinery Franchise Act, N.C. Gen. Stat. § 66–180 et seq. ("FMFA"), and the Unfair Trade Practices Act, N.C. Gen. Stat. § 75.1–1 ("UTPA"). *Id.*; *see, e.g.*, Compl. ¶¶ 17, 23.

IROCK timely removed the lawsuit to federal court on December 2, 2024. Since removal, three motions have been filed: (1) NED's Motion to Remand, ECF No. 8, (2) IROCK's Motion to Transfer Venue to the United States District Court for the Northern District of Ohio, ECF No. 14, and (3) IROCK's Motion to Dismiss, ECF No. 16. All three motions have been fully briefed and a hearing was held on May 21, 2025. The motions are therefore ripe for review. As discussed further below, the Court's disposition of the first two motions eliminates the need to consider the third motion at this juncture.

## III. LEGAL STANDARD

**A. Motion to Remand**

"[S]ubject matter jurisdiction is a threshold issue" which a court "must address before addressing the merits of [a] claim." *Jones v. Am. Postal Workers Union*, 192 F.3d

3

417, 422 (4th Cir. 1999). Without subject matter jurisdiction, "a court can only decide that it does not have jurisdiction." *Burrell v. Bayer Corp.*, 918 F.3d 372, 379 (4th Cir. 2019) (quoting *United States v. Wilson*, 699 F.3d 789, 793 (4th Cir. 2012)). Accordingly, when faced with a motion to remand and other pending motions, "a court must first assess the motion to remand and may only consider [the other motions] if the court determines it has subject matter jurisdiction over the action." *Smallwood v. Builders Mut. Ins. Co.*, No. 3:23-cv-67, 2024 WL 844868, at *5 (E.D. Va. Feb. 28, 2024) (quoting *Santiago v. Pro. Foreclosure Corp. of Va.*, No. 3:23-cv-378, 2023 WL 6964746, at *2 (E.D. Va. Oct. 20, 2023)); *see, e.g.*, *Burrell*, 918 F.3d at 379–80.

A district court must remand a case back to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). The party seeking removal bears the burden of demonstrating that removal is proper and that the federal court has subject matter jurisdiction over the action. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). Federal courts "must strictly construe removal jurisdiction," and "[i]f federal jurisdiction is doubtful, a remand is necessary." *Id.*

**B. Motion to Transfer**

Under 28 U.S.C. § 1404(a), a civil action may be transferred to another district if (1) the claims might have been brought in the transferee forum, and (2) the interest of justice and convenience of the parties and witnesses justify transfer to that forum. *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). As such, a district court considering a transfer motion brought under § 1404(a) typically "must

4

evaluate both the convenience of the parties and various public-interest considerations." *Id.* And after weighing the relevant factors, the court must then "decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Id.* at 62–63 (quoting 28 U.S.C. § 1404(a)).

## IV. DISCUSSION

The Court now addresses two of the motions presently before it: (1) NED's Motion to Remand, and (2) IROCK's Motion to Transfer.

**A. Motion to Remand**

NED has moved to remand this case to state court on the grounds that IROCK's removal "omitted necessary pleadings—specifically[,] the disclosure statement required by Fed. R. Civ. P. 7.1(a)(2)(A) and [M.D.N.C. Loc. R.] 7.7(a)." Mem. Supp. 1, ECF No. 9. In NED's view, this omission renders IROCK's removal "procedurally incomplete," and thus compels remand. *Id.* IROCK disagrees, noting its compliance with the federal removal statute, 28 U.S.C. § 1446, and urging that the substance of its removal documents complies with the other rules cited by NED. The Court agrees with IROCK and will deny NED's Motion to Remand.

Removal procedure is governed by 28 U.S.C. § 1446, under which a defendant seeking to remove a case "shall file . . . a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon [it] in [that] action." 28 U.S.C. § 1446(a). The notice of removal must be filed with the district court within 30 days after the defendant receives the state court complaint. *Id.*

5

§ 1446(b)(1). "Promptly after the filing of such notice of removal," the defendant(s) shall also (1) "give written notice thereof to all adverse parties," and (2) "file a copy of th[at] notice" with the state court in which the action originated. *Id.* § 1446(d). Together, these filings "effect the removal." *Id.* That is, they operate to freeze further state court proceedings and clear the way for the action to proceed in federal court as if it had commenced there. *Id.*

There is no real dispute that IROCK complied with § 1446's requirements. IROCK timely filed a notice of removal, and the notice itself includes both a short and plain statement of the grounds of removal and a copy of all process, pleadings, and orders served upon it. *Id.* §§ 1446(a), (b)(1); *see* Mem. Supp. Mot. Remand 3, ECF No. 9; Mem. Opp'n Mot. Remand 4, ECF No. 12; Am. Reply 2, ECF No. 23. In addition, IROCK promptly filed a copy of the notice with the originating state court. § 1446(d); *see* Mem. Opp'n Mot. Remand 5 n.1; Am. Reply 2. These filings were all that was required to "effect the removal." 28 U.S.C. § 1446(d). Perhaps sensing that IROCK's removal lacks any legitimate infirmities, NED takes a different tack and argues that IROCK failed to file a corporate disclosure statement along with its notice of removal, as required by Fed. R. Civ. P. 7.1(a)(2)(A). There are three difficulties with this line of argument.

First, it is well settled that the Federal Rules of Civil Procedure do not govern removal; instead, they only "apply to a civil action *after* it is removed from a state court." Fed. R. Civ. P. 81(c)(1) (emphasis added); *see* Charles A. Wright, Arthur R. Miller & A. Benjamin Spencer, *Fed. Prac. & Proc.* § 3729 (Rev. 4th ed. 2024) ("The practice and procedure for removing a case from state court to a federal court is governed by federal

6

statute and not by the Federal Rules of Civil Procedure; the latter, however, govern a case after removal is effected."); *id.* at § 3738 ("*After* the removal of an action from state court, . . . the [] case will be governed by the Federal Rules of Civil Procedure[.]" (emphasis added) (collecting cases)). NED is therefore misguided in its attempt to rely on the Federal Rules of Civil Procedure to contest the removal procedure employed by IROCK.

Second, to the extent that Rule 7.1(a)(2)(A) *does* govern removal—a questionable proposition, for the reasons noted above—IROCK substantively complied with its requirements. Rule 7.1(a)(2)(A) provides that a party must "file a [corporate] disclosure statement . . . when the action is filed in or removed to federal court." That statement must "name—and identify the citizenship of—every individual or entity whose citizenship is attributed to that party." Fed. R. Civ. P. 7.1(a)(2). Here, while IROCK did not immediately file a *separate* corporate disclosure statement, its notice of removal included all the necessary information. *See* Notice of Removal 3–4 (noting that IROCK is an LLC and identifying its members and their respective citizenships). Moreover, it separately filed a corporate disclosure statement containing the necessary information on December 10, 2024—just eight days after it removed this case. *See* Corporate Disclosure Statement 1–4, ECF No. 11. In other words, IROCK complied with the substance of Rule 7.1(a)(2)(A) either when it removed this case, or just over a week later. NED fails to offer any compelling reason why the Court should conclude that *neither* of these filings satisfy

7

IROCK's obligations under Rule 7.1.[3,4] Nor has IROCK identified any prejudice it suffered by reason of the late Rule 7.1 filing.

Third, none of the case law cited by NED supports the proposition that remand is the required remedy for failing to timely comply with Rule 7.1. Rather, those cases largely focus on the impact that late or deficient filing may have in determining whether diversity jurisdiction exists to hear the case. *See, e.g.*, *Coleman v. Selene Fin., LP*, No. 23-cv-3096, 2023 WL 9232950, at *5–6 (E.D.N.Y. Dec. 5, 2023). Here, there is no suggestion that the court lacks such jurisdiction so the cases cited by NED are inapposite.

In sum, the circumstances of this case do not warrant remand. Accordingly, the Court will deny NED's Motion to Remand.

**B. Motion to Transfer**

Having resolved NED's Motion to Remand, the Court turns now to consider IROCK's Motion to Transfer. *See Smallwood*, 2024 WL 844868, at *5 (noting that a motion

---

[3] To be sure, Rule 7.1(b)(2) provides that the disclosure statement should be filed with a party's "first appearance, pleading, petition, motion, response, or other request addressed to the court." But minor technical delays have frequently been excused in similar contexts. *Cf., e.g.*, Wright, Miller & Spencer, *Fed. Prac. & Proc.* § 3733 (collecting cases and outlining how courts frequently decline to remand cases based on *de minimis*, curable, removal-related errors). NED articulates no reason why the same shouldn't be done here.

[4] NED also raises the related argument that M.D.N.C.'s Local Rule 7.7(a) compels remand. That rule, like Federal Rule 7.1, requires the filing of a corporate disclosure statement. NED's argument on this point thus shares the same fatal flaw as its Rule 7.1-based argument—to the extent that Local Rule 7.7(a) governs removal *at all*, IROCK substantively complied with its requirements when it filed a Corporate Disclosure Statement eight days after removing this case. Such a minor delay does not warrant remand, particularly given that Local Rule 7.7(a) is silent on the *timing* of the filing of such a statement.

to remand should be considered before other pending motions). IROCK has moved to transfer this case to the Northern District of Ohio under 28 U.S.C. § 1404(a). In support of its motion, IROCK points to the forum selection clause in Section 22 of the Agreement, which provides that "[a]ny legal proceedings relating to this agreement shall be conducted in any court of competent jurisdiction sitting in Cuyahoga County in the State of Ohio." Agreement 20. NED opposes transfer, primarily arguing that various "public-interest factors" render the Agreement's forum selection clause unenforceable. *See* Mem. Opp'n Mot. Transfer 6–9, ECF No. 29. Ultimately, the Court agrees with IROCK and will grant its motion to transfer this case to the Northern District of Ohio.

Typically, a district court considering a § 1404(a) motion "must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Constr. Co.*, 571 U.S. at 62. "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Id.* at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). Under such circumstances, district courts must adjust their § 1404(a) analysis in three ways. *Id.*

First, "the plaintiff's choice of forum merits no weight." *Id.* Rather, "as the party defying the forum selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained for is unwarranted." *Id.* To be sure, plaintiffs "are ordinarily allowed to select whatever forum they consider most advantageous," a right the Supreme Court has termed "venue privilege." *Id.* But when a plaintiff contractually agrees to bring suit only in a specified forum, they effectively

9

exercise their "venue privilege" to select that forum. *Id.* "Only that initial choice deserves deference," and so the plaintiff "bear[s] the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Id.* at 63–64. That is NED's burden in this case.

Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum selection clause "should not consider arguments about the parties' private interests."[5] *Id.* at 64. Instead, a district court may only consider arguments about *public* interest factors. *Id.* These factors include: (1) "the administrative difficulties flowing from court congestion," (2) "the local interest in having localized controversies decided at home," and (3) "the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 62 n.6. Because the public interest factors "will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 64; *see id.* ("Although it is conceivable in a particular case that the district court would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause, such cases will not be common." (citation omitted)).

And third, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry

---

[5] The rationale for this principle is that when parties agree to a forum selection clause, they essentially "waive the right to challenge the preselected forum as . . . less convenient for themselves or their witnesses, or for the pursuit of the litigation." *Atl. Marine Constr. Co.*, 571 U.S. at 64. As a result, "the private-interest factors [are deemed] to weigh entirely in favor of the preselected forum." *Id.*

with it the original venue's choice-of-law rules." *Id.* This factor will sometimes "affect [the relevant] public-interest considerations." *Id.*

All told, "[w]hen parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations." *Id.* at 66. This principle is reflected in the Supreme Court's admonition that a § 1404(a) motion to transfer based on a valid forum-selection clause should only be denied "under extraordinary circumstances." *Id.* at 62; *see id.* ("[A] valid forum selection clause [should be] given controlling weight in all but the most exceptional of circumstances." (cleaned up)). A review of the record here establishes that there are no such "extraordinary circumstances." *Id.* Transfer to the parties' agreed-upon forum—the Northern District of Ohio—is therefore warranted.

To begin, there is no dispute that the Agreement contains a valid forum selection clause. NED thus bears the burden of showing that the public interest factors—which will "rarely defeat a transfer motion"—render transfer inappropriate. *Id.* It falls short of carrying that significant burden here.

We start with the first public interest factor—the administrative difficulties flowing from court congestion. On this point, NED cites various statistics apparently supportive of its argument that "the Middle District of North Carolina is substantially less congested than the Northern District of Ohio." Mem. Opp'n Mot. Transfer 6; *see id* (providing statistics regarding the overall number of cases filed in each district, as well as the average number of cases per judgeship). But these statistics are largely immaterial. As numerous courts have observed, "to the extent that court congestion matters, what is important is the speed

11

with which a case can come to trial and be resolved," *not* the overall number of cases pending before a given court. *In re Ryze Claims Sols.*, 968 F.3d 701, 710 (7th Cir. 2020) (quoting *In re Factor VIII or IX Concentrate Blood Prod. Litig.*, 484 F.3d 951, 958 (7th Cir. 2007)); *see Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984) (same); *In re Scott*, 709 F.2d 717, 721 (D.C. Cir. 1983) (same); *Fannin v. Jones*, 229 F.2d 368, 369 (6th Cir. 1956) (same). And the most recent case management statistics suggest that the Northern District of Ohio and Middle District of North Carolina fare similarly when it comes to this more relevant court congestion metric. *See United States District Courts – Judicial Caseload Profile*, Dec. 31, 2024, https://www.uscourts.gov/data-news/data-tables/2024/12/31/federal-court-management-statistics/n-a-1 [https://perma.cc/GJ84-NNLD] (reflecting that the average time to disposition in a civil case in the Northern District of Ohio is 8.1 months, while it is 7.8 months in the Middle District of North Carolina). Accordingly, the first public interest factor weighs at best neutrally.[6]

The analysis of the second public interest factor—the local interest in having localized controversies decided at home—shakes out similarly. Both states have *some* interest in resolving this case; after all, NED (and its inventory) are in North Carolina, and IROCK is based in Ohio. In addressing this point, NED puts forth its main argument for

---

[6] Were the Court to consider NED's preferred metrics, recent statistics suggest that the Northern District of Ohio may well be a superior venue. *See United States District Courts – Judicial Caseload Profile*, Dec. 31, 2024, https://www.uscourts.gov/data-news/data-tables/2024/12/31/federal-court-management-statistics/n-a-1 (reflecting that there are 415 cases per judgeship in the Northern District of Ohio, while there are 448 cases per judgeship in the Middle District of North Carolina) (same permalink as prior citation). The Court also notes that it is hearing this case because of a backlog of cases in the Middle District of North Carolina due to the retirement of several of the district's judges.

why North Carolina's interest should prevail: this case allegedly "concerns as-yet undecided matters of North Carolina law." Mem. Opp'n Mot. Transfer 7. The "matters of North Carolina law" in question relate to the potential applicability of several North Carolina statutes to this case, despite the Agreement's choice of law clause providing otherwise. *See id.* 9 ("[T]he UDTPA and [FMFA] apply to the dispute in spite of the Agreement's choice of law provision, and a North Carolina court would be most at home interpreting them."). It is certainly true that North Carolina has an interest in being the state to resolve that issue. But so does Ohio, since its law would govern if it's ultimately determined that the Agreement's choice of law clause is enforceable. So this factor likewise weighs neutrally.

The third factor—the interest in having the trial of a diversity case in a forum that is at home with the law—presents a closer question. On the one hand, IROCK is quick to point out that the Agreement contains a choice of law provision which dictates that Ohio law governs this suit. *See* Mem. Supp. Mot. Transfer 9. On the other hand, NED emphasizes that it brought this suit pursuant to two North Carolina statutes which it claims may not be waived via a contractual choice of law provision. *See* Mem. Opp'n Mot. Transfer 7–8. In the end, the Court need not decide which state's law applies to resolve this factor. Even if, as NED urges, North Carolina law governs this suit, NED has given no reason to doubt the Northern District of Ohio's ability to apply that law. Indeed, "federal judges routinely apply

13

the law of a State other than the State in which they sit." *Atl. Marine Constr. Co.*, 571 U.S. at 67. Without more, this factor weighs neutrally.[7]

In the end, none of the relevant public interest factors disfavor transfer. NED has therefore fallen short of proving that this is an "unusual" or "extraordinary" case where the "public interest factors *overwhelmingly* disfavor transfer." *Id.* at 62, 64, 67.[8] Accordingly, the Court will respect the parties' wishes as reflected in the Agreement and grant IROCK's Motion to Transfer.

---

[7] NED also cites *Allen v. Lloyd's of London* for the proposition that a forum selection clause is unenforceable if its "enforcement would contravene a strong public policy of the forum state." 94 F.3d 923, 928 (4th Cir. 1996). And according to NED, North Carolina has such a policy: N.C. Gen. Stat. § 22B-3. That statute reads: "[A]ny provision in a contract entered into in North Carolina that requires the prosecution of any action . . . that arises from the contract to be instituted or heard in another state is against public policy[.]" Contrary to NED's contention, § 22B-3 does not materially alter the analysis here.

Federal courts in North Carolina have repeatedly rejected similar attempts to rely on § 22B-3 to avoid the application of otherwise valid forum selection clauses. *See* Reply Br. 6–7 (collecting cases). They have primarily done so on the basis that federal law governs this Court's forum selection clause analysis, not state law. *See, e.g., Turfworthy, LLC v. Dr. Karl Wetekam & Co. KG*, 26 F. Supp. 3d 496, 509 (M.D.N.C. 2014). As such, allowing a state law to functionally enact a *per se* prohibition on forum selection clauses would run afoul of this governing principle. *See id.* ("A court cannot observe [the Supreme Court's] pronouncement that state public policies disfavoring forum selection clauses do not invalidate such clauses, while at the same time holding that such a policy renders a clause . . . *per se* unreasonable and unenforceable." (cleaned up). The Court shares these concerns and therefore rejects NED's attempt to rely on § 22B-3 to avoid enforcement of the otherwise valid forum selection clause.

[8] Indeed, even if some of the public interest factors mildly favored transfer, NED has certainly fallen well short of the "unusual" or "extraordinary" case requirement established in *Atlantic Marine*. 571 U.S. at 62, 64, 67.

14

## V. CONCLUSION

For the foregoing reasons, the Court will deny NED's Motion to Remand (ECF No. 8), and grant IROCK's Motion to Transfer (ECF No. 14), as outlined herein.

An appropriate Order shall issue.

The Honorable G. Steven Agee
United States Circuit Judge
Sitting by Designation[9]

Date: May 27, 2025

---

[9] This designation was effectuated by Chief Judge Diaz on January 1, 2025, pursuant to his authority under 28 U.S.C. § 291(b), which provides that "[t]he chief judge of a circuit . . . may, in the public interest, designate and assign temporarily any circuit judge within the circuit . . . to hold a district court in any district within the circuit." *See* Designation of a United States Judge for Service Within the Circuit 1, ECF No. 19 ("I do hereby designate and assign the Honorable G. Steven Agee to perform the duties of district judge in the United States District Court for the Middle District of North Carolina for the period of January 1, 2025, through June 30, 2025.").